Before I start, my colleagues have asked me to inquire of the Court how they intended to split up the 20 minutes allotted. Well, let me just say this to all counsel. Your briefing, I thought, was quite thorough, and I don't see any reason why we need more than 40 minutes for this case. So we'll allow, I think, 20 minutes for the appellant, and then I think the other two parties can split 10 minutes each. Start the clock again. Go ahead. Okay. Start the clock at 20. Okay. Yeah, we'll start over. We'll consider that to be case management time. I think you could probably read the brief entirely and reply in 20 minutes. I think I timed it, and it took just about 30 on the treadmill. There you go. We're getting a little too wordy. Quickly, let me just set the table also to help the other colleagues of mine when they're up here to set the chronology of what happened here factually, although the issue presented is one of law. But very quickly, my client, Eileen Marrero, married Scott Parker in 1981. About nine years later, in 1990, Mr. Parker executed a will, leaving his entire estate to the primary beneficiary, Eileen Marrero, at that point in time. About a year later, a little over a year later, Marrero filed a petition for dissolution of the marriage. That was on October 11 of 1991. On October 29 of 1991, so we're talking about a matter of three weeks later, Mr. Parker executed the beneficiary designation form for his company-sponsored ERISA life insurance plan, and that's what is really the heart of the case that we have to talk about today. So he was aware that she had filed the divorce papers three weeks before he wrote on the beneficiary line, my wife, per the will. We're going to have to be very specific about what's in that beneficiary form. He wrote, quote, as indicated in my will, for the block for primary beneficiary, and of course right below that you'll see block for contingent beneficiary. So the will, so far as we know, the will that was in existence was the 1990 will. So far as we know, in 1991, when he writes down as indicated in my will, that is a reference to the will that he had executed one year before. That is correct. And he knows at that point that his ---- But actually, you know, to be fair to Mr. Parker, it could very well be that down the road he was going to write another will and revoke the first will. And so we're really kind of talking about his control of the flexibility of beneficiary designations by using will, which rolls us into the question of is it incorporated by reference and how that all plays together here. But let me go on with the facts just a little bit to set the table before we start discussing the legal issues. One fact that you've not mentioned is before he wrote as indicated in my will, he put the initials ES, meaning estate. That is correct. You notice that at the bottom of the form there are various things for different ways of identifying relationships. And, Judge Bea, I'm going to refer you on relationship coding to footnote two in the Egelhoff decision, the United States Supreme Court majority opinion, because there's a reference there about the use of these codes and whether they are or not significant in determining the appropriate beneficiary. But, again, let me go on here with the table. After filling out the beneficiary designation form, Marrero and Parker were actually formally divorced on December 20th, 1991. So that's about five weeks after he's filled out the designation form. And then what happens next is Mr. Parker remains single for eight years or so. This beneficiary designation form is on file with the company throughout this entire period up to his death. In 1999, he marries Miss Petrofita. Parker then dies about 14, 15 months later in July of 2000. In November of 2000, the probate court in the state of Arizona revokes the will by virtue of Arizona's divorce revocation. Let me stress something out. There was a child engendered before he died. Pardon me, sir? There was a child engendered before he died. Yes. The child was conceived before he died. Not with Petrofita? Not with Petrofita. That is correct, with another lady. And the child was actually born on December 6, 2000, after the state court has invalidated the will. And at that point in time, the next important thing that happens is that one of the planned fiduciaries, MetLife Insurance Company, in this particular case, files an interpleader action in the United States District Court in Arizona. That's in May of 2001. Naming in that lawsuit the child, the estate, the current wife, the ex-wife or former wife, and all the contingent beneficiaries, which were relatives of Parker, that were in the will. So basically they go to the court and say, hey, we interplead, you figure it out. And then finally in June of 2003, the district court awarded the insurance benefits to Parker's estate, based upon its understanding of the facts and the law. So once again, to set the table, the real issue here, at least from my perspective, is whether the beneficiary designation made by Parker was ineffective as a matter of law because it referenced its will instead of specifically listing the name of the beneficiary designated in the will. And that's really what it all comes down to. What legal standard are we to judge whether the designation is effective? Is that a federal standard? Is it the plan standard? Well, when we talk after Eagle Hop, it's not a state law matter. No. Actually, your standard of review is de novo. The standard of review is fine. But what law am I supposed to look for to decide whether the designation is effective or not? You would look to federal law, to the law of ERISA as pronounced. What does ERISA say about how specific one has to be in designating a beneficiary? Absolutely nothing. Okay. So ERISA doesn't help us then. Okay. Now what's your fallback position? Well. You have to look to the plan document, right? In these matters, I'm constantly telling everybody the plan, the plan, the plan. The plan controls everything. And when you read the Eagle Hop and Kennedy and all of these cases, what the courts keep coming back to is we must allow freedom and flexibility to plan drafters and plan administrators. And what language can you point to in the plan that governs how specific one must be in designating a beneficiary? There is no specific plan language about that. This is the problem. The question becomes, is this court, as the district court did, going to include a restriction in the plan that the document otherwise does not impose with respect to the manner or the how do we designate a beneficiary? What happened in the district court, Judge Bybee, is the judge got caught up in who is a beneficiary. And there's no doubt that they are listed in ERISA, and they're very specific, trusts, estates, spouses, children, individuals, people, whatever it may be. But the issue here is not who, but how is the manner of designation accomplished? And on that issue, ERISA is silent. So we look at the ERISA case laws, and we've cited a few Ninth Circuit decisions that talked about the use of incorporation by reference into ERISA plan documents when trying to deal with certain issues regarding what the plan is, what it means, and what the language is. So the answer to you say to me, Richard, or you say to me, Mr. Wah, why is there nothing in ERISA that's telling us that? Does that cut against my argument? Or nothing in the plan, does that cut against my argument? Quite the opposite, it supports my argument. One of the touchstones of ERISA always is that the plan participants must be able to understand their rights and obligations with respect to the plan and what they're allowed to do and not to do. And so we get into this terrible conundrum here where this gentleman believes that he has made a proper designation. The company holds on to the document and keeps it for eight years without ever saying there's anything wrong with it. When all these issues come up, the company doesn't say we're going to pay the estate or we're going to pay the current wife or we're going to pay anybody. What the company simply says is we're going to interplead the funds into the court. So we've got a situation where when we're going to analyze this, we look more at the traditional concepts on which ERISA law is predicated, and that is that plan drafters have to be free to do whatever they choose to do so long as it doesn't violate ERISA. And that leads us, of course, into issues discussed in Egelhoff. None of the parties in this case disagree that Arizona's divorce revocation statutes and probate laws that would otherwise invalidate the will do not apply to the ERISA benefits. Remember, we're not talking about all of the benefits of the estate here. This gentleman had other assets, stocks, bonds, pension plans, everything else. That is all properly disposed of through the state law dictation, if you will, or declaration of how it should go in this situation. Is there any indication that anybody affiliated with the plan reviewed the form to see whether he had properly filled it out, whether he had properly designated things, whether it was unambiguous? The record is totally silent on that. We don't know whether anybody reviewed this. No, no. However, you know, if I could write the opinion in this case, I'd be talking about those very kinds of issues because we have to get the message published out there. And that's why it's so important when you're deciding these ERISA cases to hopefully publish your opinions to provide guidance to the plan drafters and to the plan administrators and fiduciaries so they know what to do in cases like this. If you are going to state in this case that the doctrine, the concept of incorporation by reference, should not apply even though it's not prohibited by ERISA and even though it's not prohibited by the plain language, then please publish an opinion to that effect so that everybody out there will understand what they're supposed to do in these situations. Assume that we accepted your invitation and we wrote the opinion that said it's okay to incorporate by reference some document outside the plan. I thought there was a general principle in ERISA that essentially says that it has to be contained within the plan documents, that we don't want to put the onus on the shoulders of the plan administrator to have to go out and seek out a legitimate will or determine whether that is a legitimate will or the last will that was actually written. So how do we reconcile those two? We have to reconcile it the same way we constantly do when we have to balance these interests in ERISA cases. You're entirely right in what you're saying, but the higher duty when you read ERISA case law and understand the precepts behind this whole area of the law is that the message here is to inform the plan participants, to keep them knowledgeable. We're not asking you to put a burden on plan administrators other than what they choose to have voluntarily. If you write an opinion that says we are going to allow incorporation by reference when there's no reason, no limitation in the plan and no legal reason not to do that, you are basically saying to plan drafters, however, if you want to place that limitation on, you can write it into the plan. When it's written into the plan, then the plan participants can read the plan, the SPD, or even these beneficiary designation forms and understand when they're doing it right and when they're doing it wrong. You're probably not going to like this question, but I'll give it to you anyway. Wouldn't it be simpler for us to simply say it has to be clear on the face of the beneficiary designation form? And if it is not clear, because in this case it had, we had to look to some external source to resolve it, then the default is that the, in this case, the proceeds go to the estate. However, State law determines, you know, whether it's done by intestacy or whether there are contingent beneficiaries. Let me ask you this, Judge Tolman. Well, rather than asking me the question, what's wrong with that suggestion? It's a simple rule, right? Would that cause major heartburn among practitioners because it isn't clear in advising clients? Anything you write that produces clarity in this area is going to be helpful, one way or the other, on any side of these issues. But, you know, I don't want to stand here and run through all the possibilities, but let's say that the individual puts in there, as indicated on the attached sheet or the separate sheet that's in my personnel file. Are we going to then say that lacks clarity? Are we then going to say that it's an improper designation? I mean, if we're going to write a rule that applies here, we've got to write one that's going to fit all of these situations. But the suggestion that you made in your brief, you know, per the list in my locker, you know, is an intriguing place because it does tell us that there is a particular place and we're to look for something very particular. Here he says, as indicated in my will, which raises lots of questions. How many wills does he have? Do we have to look to state law to tell us which of two competing wills is valid because one of them was properly signed and the other one was not? Or one was amended and now we don't know whether the amendments are good or not. What would have happened here if Mr. Parker had said, as indicated in my will, consistent with Arizona law? Would that run afoul of Egelhoff? If in his own hand he had written, as indicated in my will, comma, consistent with Arizona law? I don't know. I still think you've got ambiguity there. But I was going to refer you, Justice Breyer, to answer your question that you raised about how, what are we dealing with when we're questioning, what happens if we're dealing with multiple wills or invalid wills or whatever. And I refer you to the Kennedy case, which is cited in our brief, where the court had to deal with that chambers of horrors type of argument and how they dealt with it very simply says, you know, that they're not going to engage in speculations. Insurers who offer employee benefits plans under ERISA are free to allow policyholders to change beneficiaries through more than a single means, so long as the policyholders are informed of the means and the plan administrator complies with its fiduciary obligations. Now, that case is a little bit different than this case, and I'm not going to argue the particular facts. But here, the message, again, is being repeated here. So long as plan participants are informed. This is the most important principle of ERISA. Yes, it's important that we make it easy on plan administrators, but their ultimate duty is to keep the plan participants informed. Well, Mr. Wall, I'm going back to the same question I posed a little earlier. Would it cause major problems in the uniform enforcement of ERISA law if we were to do what the States do in their probate practice, which is to provide a default? And as I understand State probate law, the default is always if we can't find a valid will, then it passes under our rules of intestate succession. Correct. I've only got four minutes left. My answer to that is, if he had written, if Mr. Parker had written, the estate of Scott Parker, are we there? Sure. We're there. It's the estate. Is that what he did? No. Unfortunately, that's not. The estate before, he says, is indicated. Well, again, I'll tell you that the reason for that, honestly, quite frankly, is he's thinking about I'm going to always be able to control all my assets through my will. He doesn't know ultimately if the primary or the continued beneficiaries are going to be spouses, peoples, charities, trusts, or whatever. He has the dogs that are designated in the will. Is that why he didn't say my wife is indicated in my will? Is that why he says estate instead of spouse is the code? Because there was money that was going to be going to the dogs? Well, of course, at the time he's filling out the form, he doesn't know if his wife will even still be alive. And now we're talking about contingent beneficiaries. You know, quite frankly, he probably could have left it to the dogs, but I think the district court would have found that that was an improper identification because they're not a person. You know, I agree with you that there are a lot of competing interests and issues here. The estate is a person. No, estate is under ERISA law. The word estate can be a beneficiary is specifically listed as states and trusts. So that's the answer to that. Look, I've only got about a few minutes. Sure. Thank you very much. Thank you, Mr. Arnold. All right. Is it Ms. Humphrey? Your Honors, I absolutely agree with Mr. Wah that you've got to follow the plan in this case. And that is the principal lesson I think of Egelhoff is if the plan tells you what to do, you've got to follow the plan. And in this case, the plan does tell you what to do. First of all, the plan does tell you how to name or change your beneficiary. It's on page one of the relevant portion of the plan, which is on the tab 72 in the supplemental excerpts of record. It says that you may name or change your beneficiary by filing a written request on a form approved by the company at its home office. The problem with what Mr. Parker was trying to do is he was trying to say, I don't want to name my beneficiary right now, and I don't want to use your form. I want to say that I will name my beneficiary when I choose, and I will change it when I choose, and I will use whatever form I want to change it, and I will keep it wherever I want, and I won't even tell you where it is or what date it is or whether I've written it yet. And that is not in accordance with the plan. And that is why you can't use incorporation by reference in that sense. I don't think you have the same problem if you say, as indicated in my will dated April 16, 1990, attached here too. And then you look and attached there too, it says, my pension benefits for X company go to, you know, that's using the form and you're just attaching another sheet of paper. It doesn't matter as long as it's together and the administrator has it. But you've got to be able to find out who the beneficiary is by using the plan documents and the beneficiary form. And the gentleman could have changed beneficiary by filing a subsequent form. Absolutely. Any time. Absolutely. And so the plan tells you exactly how you can change the beneficiary. The plan is very clear that it's got to be on the form. And the reason for that is, of course, the certainty that it provides. And you can't get out of that by saying, I don't want to use your form. I don't want to decide right now. I want to, as Mr. Wah said, keep the control and flexibility for myself. That's exactly what you're not allowed to do under this plan. You're not allowed to keep the control and flexibility for yourself. You've got to say who is going to get that money. And you've got to say it on the form. The plan also tells you, Judge Tallman does tell you what to do in case the beneficiary designation is ineffective. You don't send it to the estate. The plan says if there's no effective beneficiary designation, proceeds shall be payable in the following order. Number one, the spouse if living. We've got that here. We have his widow. She's living. It goes to her. The plan is 100 percent clear on that. The estate is number four, by the way, down on that list. So that's not the default under this plan. So this plan is very clear. It has two steps. It says, look, you've got to name a beneficiary. You've got to name them now on the form. You can't keep the control and flexibility for later. You can't name a document that you might not have written yet and you plan to change at a later date. And if you don't, it will go to your spouse. And if your spouse isn't living, it will go to your children. It's very clear what happens. In Egelhoff, there was a lengthy discussion about why it is that you've got to be able to tell who the beneficiaries are by looking at the plan documents and the beneficiary form. First of all, the majority mentioned the statute 29 U.S.C. 1104 A1D, which is the part of the statute where it says the fiduciary must administer the plan in accordance with the plan documents. So the U.S. Supreme Court has held that that means you've got to be able to find the beneficiary by looking at the plan documents and the beneficiary form. They also talked about some of the policy behind this. First of all, for the administrator, you don't want to burden the administrator, either with having to look for these outside documents or especially, you know, getting into the preemption concerns of having to apply state law to even figure out which document is being referred to. Is it permissible for someone to attach to the beneficiary form a document that's incorporated by reference? Could the decedent in this case have actually attached the indicated will and stapled it to the designation form? Would this plan administrator could quickly look at it and see who was indicated in the will? Yeah, I think with this will, it's more difficult because the will, in fact, doesn't indicate who gets these assets. It says, my assets go to my wife, Eileen Parker at the time. It says, my assets go to my wife. And so it really doesn't even indicate where what would normally be a nonprobate asset anyway would go. The problem at the time the administrator would be looking at the documents is that Eileen Parker is no longer his wife. Right. And the will, of course, the recital starts off by saying, whereas Eileen Parker is my wife and whereas, and then it says, all my assets go to my wife and my wife, my wife, my wife again. And it goes on like that. So I'm not sure in this case, I'm not sure that under the facts of this case that would work. But as I said, if the form says my will dated whatever and it's attached here too and it's actually stapled and there it is and the administrator has it in front of them. And the other thing that the Egelhoff Court mentioned was the beneficiaries. The beneficiaries need to know. And the Supreme Court in the Curtis Wright case in 95 also talked about that. The beneficiaries, they said, must be able to learn their rights at any time. How can the beneficiaries learn their rights at any time? If they look at the designation form and it says it's indicated in my will. They can't learn their rights at any time. The Egelhoff Court also talked about both the administrator and the beneficiary needing to avoid the delay, the uncertainty, the litigation expense that comes into play when there's this kind of incorporation by reference. And that is one of the reasons I think also for the statutory definition of person. That is also a federal law that comes into play in saying how do you name your beneficiary. The federal law says you've got to name a person. And here's what a person is. A person is an individual, a corporation, a partnership. It can be your estate. And it lists a pretty wide variety. But a person is not, I'll tell you later, in a document that maybe I haven't written yet, but I promise I'll write it and I'll put it somewhere. That's not a person. That is an instruction to the administrator to try to find another document that hasn't been given to the administrator. And that's not an appropriate designation. What was the district? I assume you made the same argument to the district court when you were arguing that the purported designation was ineffective. What was the district court's response when you pointed out that the plan document says that in that case the default is to a spouse that's living? Well, he didn't respond at the time of argument to that. However, and he did find that the designation was ineffective. And the final paragraph of the order is a little confusing because he says the designation is ineffective. The default would be to the spouse, but in this case I'm going to use the relationship code instead. I'm going to go to the ES, the relationship code. The reason it's a little confusing is because he does that, and then he drops a footnote to Egelhoff, to footnote 2 in Egelhoff, where they say you can't look at the relationship code, for heaven's sake. That's just a layperson's attempt to provide all the information that's being asked for. So the district court suffered from the same problem that the decedent did in filling out the form? I would certainly think not. I have a great deal of respect for Judge Steelbrook. I don't mean to cast aspersions on Judge Steelbrook. It is a curious, I have to agree with you, it is a curious. It's odd that the footnote was dropped, certainly. It was dropped at that point in the opinion. It's very odd. As far as the relationship code, I think it's clear from the footnote in Egelhoff. I think it's clear, for example, in Duggan's case in the, I believe it was the Fifth Circuit in 2000, they went into that quite a bit and said, look, you've got to look at what's the real designation. A layperson is going to try to fit their designation into a relationship code. But if the designation is ineffective, the relationship code can't become, in essence, the contingent beneficiary. There is a line for contingent beneficiary. You name your beneficiary. If that doesn't work, you go to your contingent beneficiary. If you don't have one, it goes to your spouse. And it's very clear in the plan. It's not confusing. As far as I would like to say, I do think, and we really haven't gotten into it, I do think that the incorporation by reference is especially difficult when you have It's not just that a document is governed by State law, as the estate said in its brief. It's when you have to use State law to even figure out which document you're talking  have conflicting wills. For example, if you had a will that was handwritten, but it wasn't signed, and then you had a will that was typewritten and it was signed, but there were no witnesses, you know, which one of those do you take? Do you look at Arizona law? Are they both invalid? Because both would be invalid under Arizona law. Do you nevertheless pick the one with the later date? Even if you do that, you're applying Arizona law to decide you're picking the one with the later date. I mean, it really is inextricably intertwined with the State law issues, I think. Thank you, Your Honor. Thank you very much, Ms. Humphrey. Good morning. I'm David Haga. We have taken a very simple case and made it very complex. I represent the estate of Scott Parker. I would like first to respond to the remarks of counsel for the surviving spouse regarding the issue of the default beneficiary. The estate does not agree that Ms. Petrofita is the default beneficiary under the plan. In the undisputed facts of the order, the judge says the decedent Scott Parker was an employee of Bank of America and a participant in the Bank of America group benefit plan, which is an employee benefit plan governed by ERISA. In connection with that plan, plaintiff issued an insurance policy to Parker in the amount of $457,000. It is undisputed that if there's no valid designation of a beneficiary, one must look at the summary plan description for directions under ERISA. Mr. Parker's date of death was July 21, 2000, an important date. The Bank of America associate handbook was effective on January 1, 2000, and stated, this handbook supersedes and replaces any prior communication, policy, rules, practices, standards, and or guidelines to the contrary, whether written or oral. Secondly, this associate handbook is also the summary plan description. Under ERISA, the summary plan description controls in the event of ambiguities and inconsistencies. The summary plan description in this matter states, if you die and no beneficiary designation is in effect as to any part of the insurance, or if there is no designated beneficiary then living with respect to any part of the insurance, the insurance company may, at its option, pay such part to the estate. Accordingly, if the beneficiary designation and change form of Scott Parker does not designate a beneficiary under ERISA, and we think that it does, then the estate should receive the insurance proceeds under the default. Do you have the ER reference on that, please? I'm sorry? Do you have the excerpt of a record reference for that? I don't have it in this material. I can get it for you. The district court's opinion? Yes, partly the district court's opinion, but also the Bank of America associate handbook summary plan description. But it is in the ER, I take it? It is in the ER. Okay, and what page of the plan handbook were you reading out of? I don't have that with me either. If you want to give it a slip of paper to the clerk afterwards, that will be fine. Good. It is our position that there was a beneficiary designation made by the deceased and determined by the trial judge. As you have stated, Egelhoff states that plan administration shall administer the plan in accordance with the documents and instruments governing the plan, making payments to a beneficiary who is designated by a participant or by the terms of the plan. ERISA defines beneficiary as a person designated by a participant of the plan. ERISA defines person by listing 11 entities or individuals, including, of course, a state. The court correctly found that, as indicated in my will, is not a person, is ineffective, and is not a person. And not a beneficiary under ERISA. It simply does not come within the definition of person. On the beneficiary designation and change form dated 10-29-91, Mr. Parker had six relations codes from which to select. He could have placed the initials SP for the spouse, or he could have written in the initials, the name of Eileen Parker if he wanted her to receive the benefits, but he did not. He could have inserted any other name or otherwise qualified beneficiary under ERISA as OT or other. It should be noted that Eileen Marrero Parker waived all of her present and future claims to any and all accrued retirement benefits, due from Scott Parker, from the Bank of America in the dissolution of the marriage. The valid designation written by Mr. Parker in his handwriting was ES, a state, under the relationship code. The trial court was correct in finding that Mr. Parker's entry, as indicated in my will, is not a person under ERISA, but is consistent with his entry of a state. The trial court's decision is consistent. Roberts. Counsel, how can we possibly make a judgment that a classification code is going to govern the disposition of funds once we just said that the principal line which says that, under which he said, as indicated in my will, is no longer valid? Once we erase that, because we can say, well, that's insufficiently ambiguous, but then we're going to go to a classification code? That's all we have. I agree with you that it certainly is. If you don't read them together, then there's an issue in terms of how to dispose of the estate. But as I said earlier, in my opinion, the default beneficiary is the estate anyhow. Well, I'm having a hard time reconciling what Ms. Humphrey said. She said that in the plan document it then lists the priority of succession and that the first person on the list is a spouse if living. Are you ñ is it your position that that handbook supersedes what the plan document says in terms of priority? It is, indeed, because of the date and timing. The material that she is looking at was a prior insurance policy, a prior and Bank of America merged with a number of companies. We take the position that as of January the 1st, 2000, anything that went on prior to that time is not applicable as far as the ERISA plan is concerned, and it goes to ñ it goes in accordance with the summary plan description. Ms. Humphrey, I'll give you a rebuttal on that point, because I'd like to hear your response to my question as well. The next thing that I had down was the associate handbook of Bank of America states under the subcategory of life insurance that the beneficiary means any insurance amount payable as a result of your death is payable to a person designated by you as your beneficiary on the Bank of America beneficiary form. That's not an unusual provision in ERISA, that you use our form. In this case, the beneficiary form designated the estate in the relationship code. ERISA mandates that plans be administered, quote, in accordance with the documents and instruments governing the plan, unquote, and that payments be made to the beneficiary designated, quote, by a participant. Any interpretation of the form resulting in the payment of the plan proceeds to the devisees under the decedent's will as proposed by Appellant Marrero is contrary to ERISA. Any such decision would require the plan administrator to determine the beneficiaries as indicated in decedent's will. Mr. Hager, is there anything in the plan documents which allows the employer to change the method of designation and who benefits in default by a handbook? No, I think the handbook's the fallback. I think that they cannot change the beneficiary, but if the beneficiary is defective, I think then it goes to the handbook. What I have in mind is this. The insurance company says you've got to use our forms to designate a beneficiary, and if you don't do it a certain way, then you haven't done it effectively. Suppose along comes a handbook and says, as an employee, we're paying for this insurance, and this is what we think you should do, and that's the rule now. I think the summary plan description would then trump. Would it trump? I think so. Now, where in the insurance contract is there some delegation of authority to allow the summary plan description to trump what the insurance company says is an approved method by which designation should be made? The only thing I can refer you to is what I indicated earlier, that it has to be designated by the employer, the person designated by you as your beneficiary in the Bank of America beneficiary form, that they're saying you must use our form. That's the insurance company who says you must use the Bank of America form? No, that's the associate handbook. That's the one. I guess I'm not making myself clear. Where does the insurance company say our rules are trumped by the employer's rules or handbook? I don't know that, and I don't think that – I don't know that. Thank you. Thank you. I'll jump right up here and support the estate and answer these questions you're asking, because if we don't use the doctrine of incorporation by reference, the estate does get the money. When you read ERISA law, Judge Bea, you will find that the consistent rule everywhere on interpretation is that the summary plan description language trumps everything. And the reason that the courts follow that rule is the same reason that I started up here arguing about why we should have incorporation by reference is because of informing the plan participant. The plan participants don't get the insurance contract. They don't get the detailed language of these long plan documents. What they get is a handbook, which in ERISA we call the summary plan description. You'll see that discussed in the cases, and the cases quite clearly say no exceptions. Summary plan description language always controls over everything else because that's the only thing the plan participant has. And does the most recent version of the handbook always govern? Does the most recent? Right. Do we use the one that's in effect on the date of Mr. Parker's death? If we have to go to – if we go to something other than the designation, then do we go to the handbook that is in existence at the time that he designates it, or do we use it at the time? You know, now that's a nice nuanced question, and I'll leave it to this Court to find the cases that answer that particular one. But so far as I understand it, the only summary plan description we are talking about is the handbook, which, by the way, the excerpt of record is in our excerpt. It's at – the document is numbered 70. I have excerpt 70 here. And you'll turn to page 78 at the bottom. Does my time arguing for the estate cut against my – I'll give you some time, Mr. Lauder. We really do need help on this. I understand. If you go to page 78, bottom left column, last paragraph, if you designate, just read through there, Judge Bybee. I see where it is. Okay. And that's what Mr. Hager was referring to as being the controlling piece here. Okay. Let me try and get back and argue on behalf of my client for our position in all of this. The issue – what significance, if any, do we give to the fact that the company and the plan administrators accepted this designation and never informed the plan participant that there was anything wrong, ineffective, or invalid about it? Is that an important fact in our analysis? I pose that simply to the court because I believe the answer to that has to be a resounding yes. And I believe it has to be yes for the same reason that all these cases keep telling us the optimum, the maximum that we have to follow in all these things is to inform the plan participant. If Mr. Parker is submitting this form to them and if they're not saying for eight or nine years it's wrong, and even when it all came up afterwards, the company didn't say it's wrong and give it to the estate or whatever. The company simply said we're going to wash our hands of this because, as we heard somebody earlier talk about in the earlier cases, the litigious environment in which we live. It's easier for them to go down and dump it in the court than get involved in all of this. But why can't we assume two things? One, the reason they never said anything was because some clerk received the form and stuck it in a file and nobody looked at it again for nine years. And secondly, when somebody got a claim to the $473,000 in benefits, someone actually looked at the form and said, uh-oh, we've got a problem here. We can't tell who the beneficiary is. Interpleader, we'll give it to the court and let the judge figure it out. If you want to do some assuming, I'll go you one step further. The plan administrators never did any of this stuff. It was MetLife that did it when it got the claim. I mean, they're the first ones that said, oops, something's wrong here, and they probably made that decision without even consulting the plan people. That's the reality of the insurance business that underwrites these particular types of plans. I've got two minutes. My goodness. So you're two minutes in the hole. That's three minutes that I argued for this thing. I'll give you another 60 seconds. Okay. Thank you very much, David. Because you were kind enough to help out. Okay. So here we sit. Our argument, in summary, number one, you can't support what the district court did because the district court looked at the wrong section of ERISA about who could be designated rather than how are beneficiaries designated. So the district judge was simply off base on his rationale. I know from recent rulings of this course that even when the district court's off on its rationale, if you all find that there's a good reason for reaching the same results, you'll do that. But he was, frankly, wrong on his rationale. Number two, there is nothing in ERISA itself that prevents this type of designation by referencing another document. Number three, there's nothing in the plan that prevents this. So that participants are led to believe that what they're doing is reasonable and that it will be carried out. And number four, the message here should be plan drafters, plan administrators, we are not going to impose restrictions on plan participants' beneficiary designations which are not included in the plan document itself somewhere. And no such restriction is there, which then plays to the next issue. Assuming for a million reasons why the company didn't do anything, we could equally well assume if we're going to speculate that somebody looked at it and said it's okay. We understand it. Thank you very much. Thank you, Mr. Barr. And Ms. Humphrey, I will give you the last word if you would address the question  Thank you, Your Honor. As an initial matter, I think this is the problem when new arguments are raised at the oral argument stage. This argument was clearly waived. It was never raised below. It was never raised in this court prior to today. It has always been undisputed that Ms. Petrofita is the default beneficiary. And if you look at tab 72 in the supplement Tab 72 is the Boatman insurance policy. Is that right? It was an earlier policy? I don't believe there's anything in the record about what the date is on that. And the reason is because it's undisputed. Okay, but this is the one that says Boatman's Bank Shares, Inc. Is that right? And if you That's the one that's on page one of that. Right. Which is tab 72, and it appears to be an undisputed Well, if you look at the It's actually attached to the summary judgment statement of facts, which is what I wanted to show you. Right before that, the first two pages before the plan begins, is our statement of facts on summary judgment in tab 72. Do you have that? Right. I'm looking at exhibit A. Right. And the point is that the only fact that we alleged additional to anybody else's facts on summary judgment was that the plan in place at the relevant time provided that the spouse, if living, was the default beneficiary. And then we attached the plan. Nobody objected to that. That was an undisputed fact. And it was the only fact we alleged. Certainly, it just wasn't, you know, missing in the cacophony of summary judgment facts. It's the only fact we alleged. Nobody objected to it. It's never been raised until today. And the problem, of course, with this being a brand-new argument that's raised here is that nobody has looked at whether or not the handbook really is the controlling document. As a matter of reason, it doesn't seem that the employer could change the insurance company's responsibilities by putting something in the associate handbook. It doesn't make any sense. But nobody's researched it. Nobody's briefed it because it's a brand-new argument that has just been raised today. All right. Thank you, Ms. Humphrey. And, Mr. Hager, I mean, I hate to let the argument go without giving everybody a chance. I can only have one remark in terms of the undisputed facts. The order's been out for some time. It clearly says what we are operating under as far as the B of A group benefits. And so it's not – Did you raise this argument before, and can you tell us where you raised it before? I can see – I've got the handbook pages. I can see that that is in the record and that was provided. Did you argue to the district court that instead of saying that the ES code would govern here, that what he really should have done was look to the Bank of America handbook there on page 78 and award it to the estate? I wish I could answer that. I did not make the argument in the district court. Thank you. Thank you. And I appreciate your candor, Mr. Hager. The case just argued is submitted for decision, and we'll do our best to figure it out. That concludes our calendar for this morning. We will be adjourned until 9 a.m. tomorrow morning.
judges: Tallman, Bybee, Bea